## 67365. In re A. J. M.

BIRDSONG, Judge.

Child Custody. Mr. M and Mrs. M are the parents of a four-year-old. They are living in separate homes, though they are not divorced. Mr. M is financially unable to provide adequate support for the child and has not sought to retain custody of his child. Mrs. M, over the past year, has attempted to maintain support for her child. She has worked part of the time in a night club and maintained irregular hours. At the time of the hearing, she worked as a baby sitter, earning $7 a day plus meals, and was living in public housing so that the majority of her rental was supplied. In order to work, she often left the child with her husband or other relatives. Part of the time she could not afford to pay utilities and her home was without heat or light. On these occasions, she left the child with friends or relatives but visited the child almost daily. At the time of the hearing, however, she had utilities available.

There was evidence that she frequently would go to a Waffle House to eat and visit with a friend that worked there. She also was seen on two or more occasions with male deputy sheriffs at a local truck stop at very late hours. On occasion, Mrs. M would take the child to the Waffle House. There also was evidence that the house Mrs. M had lived in over a year before the hearing was very old, had windows out, was dirty, and that stray dogs caused the house to have fleas. On another occasion, Mrs. M was observed in a bedroom with a male while others were observed using marijuana. There is no evidence that Mrs. M, however, was engaged in any immoral conduct on that occasion. The evidence also indicated that Mrs. M loved her child, cared for her to the best of her ability, and that the child was not chronically ill or undernourished.

The child's grandmother, Mrs. W, became distressed when one of her daughters (who was temporarily keeping the child) complained that the child was unhappy and wanted to be with her mother. Mrs. W sought but could not find her daughter-in-law. Thereafter, Mrs. W concluded that the child was not receiving proper care, attention, or appropriate religious instruction, and sought to obtain permanent custody of the child. Her son, Mr. M, relinquished his custodial right to his mother. Mrs. M, however, forcibly removed the child from her mother-in-law's care and reclaimed custody. Mrs. W then brought this petition for change of custody from Mrs. M to herself. The superior court in the exercise of its authority over juvenile rights found that Mrs. M was an unfit person and granted permanent custody to the grandmother with visitation rights in both parents. Mrs. M successfully petitioned this court for the grant of a

discretionary appeal, complaining that the trial court made findings of fact that are unsupported by the evidence, and committed certain procedural irregularities. *Held:*

Where a third party sues the natural, custodial parent to obtain custody of a child and to terminate the parent's custodial rights in the child, the parent is entitled to custody unless the third party shows by clear and convincing evidence that the parent is unfit or otherwise not entitled to custody. Past unfitness, standing alone, is insufficient to terminate the rights of a parent in his child. Clear and convincing evidence of present unfitness is required. *Wright v. Hanson,* 248 Ga. 523 (283 SE2d 882); *Brant v. Bazemore,* 159 Ga. App. 659 (284 SE2d 674). On review the award of custody to a third party will be affirmed only if there is reasonable evidence to support the award. *Wright,* supra; *Miele v. Gregory,* 248 Ga. 93 (281 SE2d 565).

Requiring a burden of clear and convincing evidence of a parent's unfitness prior to terminating the parent's rights in his child simply reflects the value that society places on the freedom of personal choice in matters of family life and the judgment society makes about how the risk of error should be distributed between litigants over custody. Santosky v. Kramer, 455 U. S. 745 (102 SC 1388, 71 LE2d 599). See esp. *Brant v. Bazemore,* supra. Thus, the appropriate standard of appellate review in a case involving termination of parental custodial rights is whether after reviewing the evidence in the light most favorable to the new custodian, a rational trier of fact could have found by clear and convincing evidence such unfitness or unsuitability that the natural parent's right to custody has been forfeited and lost. This standard of review safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a fact finder might base a determination on a few isolated instances of unusual conduct or idiosyncratic behavior. Santosky v. Kramer, supra, 102 SC at 1400. The inquiry as to fitness must center on the parent alone; that is, can the parent furnish adequate support and guidance without intervention by the state? In making this determination, the superior ability of the third party cannot be used as a comparison. Thus, in making this determination, the fact that a child might have better financial, educational or even moral advantages elsewhere, cannot be controlling. *Carvalho v. Lewis,* 247 Ga. 94, 95 (274 SE2d 471).

In its conclusions of law, the trial court found that the facts clearly and convincingly prove that Mrs. M presently was unfit, basing that conclusion upon findings that she failed to provide necessaries for the child; displayed a total lack of moral character; committed adultery, bigamy, and cohabitation; and had been guilty of immoral conduct.

A careful and diligent search of the record does not find support for a conclusion that the child was not furnished "necessaries." So far as the evidence shows, Mrs. M dressed the child within her means at least minimally for the weather. The record perhaps does show that cleaner, nicer, and better clothing might have been furnished by one in a more financially advantageous situation. However, there is no evidence that the child suffered from hunger, exposure, or lack of appropriate medical care. The record affirmatively shows that Mrs. M raised another child, a son, from birth to the age of 17 without state interference. She furnished support for the child at all times except when her home was unheated during which times (of limited duration) she obtained appropriate adult supervision and care. Although her life style may have differed from that of the grandmother, whenever she was away from the child she apparently obtained adequate adult supervision or the supervision of a responsible older youth. Accordingly, we can find no support in the record for the conclusion that Mrs. M failed to provide the child "necessaries."

As to the conclusions of immorality, we likewise find no realistic basis for concluding that Mrs. M committed adultery or was guilty of illicit cohabitation. Though she was observed in a seemingly compromising situation that may have given rise to a strong suspicion, there is no evidence that Mrs. M was guilty of immoral conduct. The same is true as to Mrs. M's presence at a Waffle House or a truck stop at late hours; while this might not fall within the moral standards personally held by the trial court, there is no evidence that these establishments were of notorious reputation for immorality or that Mrs. M was observed engaging in improper conduct. Even though there was evidence that Mrs. M had on occasion taken the infant to the Waffle House late at night, the evidence at worst indicates these were isolated occurrences.

As was concluded under similar circumstances in *Blackburn v. Blackburn,* 249 Ga. 689, 694 (292 SE2d 821): "We find that appellee's evidence falls short of demonstrating present unfitness such as to justify the termination of appellant's rights in her [child]. This evidence showed that on several occasions over two years ago, appellant allowed her [child] to accompany her on late night trips. The evidence also showed that appellant allowed her [child] to remain [in unhygienic conditions in her house]. However, appellant is no longer [living in that house and the evidence shows she is living in a house that is acceptable. Furthermore there is no medical evidence that the child's health is endangered]. . . . Examining the record as a whole we conclude that the evidence fails to meet the standard of appellate review we now adopt. We do not mean to suggest by this

conclusion, however, that appellant's [apparent] extra-marital relationship[s] . . . should be condoned. It would be unrealistic to ignore the fact that society may stigmatize [the child] because [of her mother's lifestyle]. However we do not think that the fact that appellant [has associated with men not her husband or had a bigamous marriage annulled] is sufficient evidence of appellant's unfitness to raise [the child]. Rather, the record shows that appellant is presently exercising 'maturity and good judgment' and 'resourcefulness' in providing for her daughter on a limited income."

The remaining enumerations raised by Mrs. M pertain to procedural irregularities. In view of the finding of insufficiency of evidence as a matter of law, these procedural irregularities are rendered moot and require no further consideration or disposition by this court.

*Judgment reversed. McMurray, C. J., and Shulman, P. J., concur.*

DECIDED JANUARY 6, 1984.

*Vicky O. Kimbrell, Lisa J. Krisher, Mary R. Carden, John Cromartie,* for appellant.
*John Fleming, Victor Hawk,* for appellee.