A00A2488. IN THE INTEREST OF L. J. L. et al., children.

(543 SE2d 818)

MIKELL, Judge.

Challenging the sufficiency of the evidence, the mother appeals the termination of her parental rights to two of her children, L. J. L. and R. L. For the reasons set forth below, we reverse the juvenile court's order terminating appellant's parental rights.

> [T]he appropriate standard of appellate review in a case where a parent's rights to his child have been severed is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.[1]

So viewed, the evidence shows that appellant is a recovering drug addict, whose addiction began in 1992. She has four children: C. L., nine; R. L., five; L. J. L., four; and R. M., three. C. L. has been in appellant's mother's custody since 1992. R. L. and L. J. L., the children at issue in this case, have always lived with appellant and/or her mother, except during periods when they were in foster care.[2] R. M. has lived with appellant and/or her paternal grandmother since her birth, when she tested positive for cocaine.[3]

On April 23, 1998, R. L., L. J. L., and R. M. were placed into the temporary legal custody of the Fulton County Department of Family & Children Services (the "Department"), after appellant failed to pick them up from a day care center. Appellant testified that she asked her niece, who worked at the day care center, to take the children to their grandmother's house, but her niece failed to do so. When appellant arrived at her mother's house that day, she learned that her children were with the Department. The Department released the children to appellant's mother on April 24, 1998. From then until March 1999, appellant habitually used drugs. She had no contact with the Department until she had begun to take the steps necessary to regain custody of her children.

The Department filed a deprivation petition on May 27, 1998, requesting custody of R. L., L. J. L., and R. M. On September 8, 1998, the juvenile court found that all three children were deprived. Conse-

---

[1] (Punctuation omitted.) *Blackburn v. Blackburn*, 249 Ga. 689, 694 (2) (292 SE2d 821) (1982).

[2] R. L. was in foster care for almost a year in 1997. Both children were in foster care for a few months in 1998 while their grandmother qualified as a foster parent. They were removed from their grandmother's custody on July 12, 1999, and were placed in foster care.

[3] Appellant testified that she has relapsed twice since 1992. During the second relapse, she was pregnant with R. M.

quently, it granted temporary custody of R. M. to her paternal grand-mother and granted custody of R. L. and L. J. L. to the Department. R. L. and L. J. L., however, were released to the custody of appellant's mother from December 1998 through July 1999.[4]

The Department filed its petition for termination of parental rights to R. L. and L. J. L. on April 20, 1999, and the hearing was set for July 12, 1999. Appellant appeared in court for the hearing.[5] Mary Fields, the Department's social worker who was assigned to the case, also appeared.[6] This was Fields' first contact with appellant. She gave appellant a copy of the thirty-day and six-month reunification case plans. To comply with the case plan, appellant was required to complete a drug treatment program as well as a parenting skills program. Also, the plan required that appellant visit and maintain monthly contact with the children and find adequate living arrangements for them.

The termination hearing was held on December 14, 1999. Appellant introduced evidence tending to show that she had satisfied each goal of the case plan. She testified that on March 12, 1999, she stopped using drugs. She introduced into evidence a certificate from an intensive outpatient drug program that she completed on August 27, 1999. She testified that she was still drug-free and submitted the results of three drug screening tests as evidence of her sobriety. Appellant also introduced into evidence a certificate of completion from a parenting skills program, dated November 16, 1999.

Appellant testified that after she moved in with her mother in March 1999, she saw her children almost every day and contributed to their support. Fields was unaware of appellant's visits with her children before July 1999. However, she testified that appellant had been visiting R. L. and L. J. L. monthly at her office since then. During those visits, appellant told Fields that she was enrolled in parenting classes and a drug treatment program. Appellant also told Fields that she had applied for housing vouchers with the housing authority.

At the hearing, appellant introduced her voucher for public housing into evidence and testified that she had found suitable

---

[4] R. L. and L. J. L. were in appellant's mother's custody for two or three months in early 1998 and were returned to her in December 1998. During the interim period, appellant's mother surrendered custody because she needed to qualify as a foster parent to obtain financial support for child care. On July 12, 1999, the children were placed in foster care because she failed to submit to a drug screening test. In her affidavit, appellant's mother explained that she could not take the test because she had misplaced her driver's license, but the children were still removed from her custody.

[5] The hearing was rescheduled to allow appellant's counsel time to prepare.

[6] Incidentally, Fields removed R. L. and L. J. L. from appellant's mother's custody on the day of the hearing.

accommodations. In spite of appellant's efforts to comply with the reunification plans, however, Fields opined that appellant's parental rights should be terminated because of her history. Fields testified that appellant had completed the goals once before when R. L. was removed from her custody. Within six months after he was returned to appellant's care in December 1997, the incident of April 23, 1998, occurred. The juvenile court terminated appellant's parental rights.

"Although we are reluctant to reverse a trial court's determination, there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship."[7] To sever the relationship, a juvenile court must "first determine whether there is *present* clear and convincing evidence of parental misconduct or inability."[8] To determine this, the juvenile court must find that: (1) the child is deprived; (2) lack of proper parental care or control by the parent in question is the cause of the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[9] Provided parental misconduct or inability is found, the juvenile court must then decide "whether termination of parental rights [would be] in the best interest of the child. . . ."[10]

In this case, there was evidence to support the first two findings required by OCGA § 15-11-94 (b) (4) (A). The juvenile court determined that the children were deprived in its orders of June 8, 1998, and May 4, 1999. Appellant is bound by those determinations because she has not appealed the orders.[11] Next, evidence of appellant's history of drug use arguably supports the finding that the deprivation was caused by appellant's lack of proper parental care and control.[12] However, OCGA § 15-11-94 (b) (4) (A) (iii) and (iv) require that the court find that the deprivation is likely to continue or will not likely be remedied and is likely to cause serious harm to the child.[13] As to these findings, we find the evidence lacking.

The evidence presented at the hearing shows that when appellant was given the reunification plan on July 12, 1999, she had already begun to take the steps necessary to reunite her family.

---

[7] (Citation and punctuation omitted.) *In the Interest of K. J.*, 226 Ga. App. 303, 306 (1) (486 SE2d 899) (1997).

[8] (Emphasis supplied.) OCGA § 15-11-94 (a).

[9] OCGA § 15-11-94 (b) (4) (A).

[10] OCGA § 15-11-94 (a).

[11] *In the Interest of J. M. D.*, 221 Ga. App. 556, 558 (472 SE2d 123) (1996).

[12] OCGA § 15-11-94 (b) (4) (B) provides that in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, several factors. One of the factors is excessive use of or history of chronic unrehabilitated abuse of narcotic drugs.

[13] See *In re N. F. R.*, 179 Ga. App. 346, 348 (2) (346 SE2d 121) (1986).

Appellant completed an eight-week intensive drug treatment program on August 27, 1999. Subsequent drug screening tests introduced into evidence revealed that she was drug-free. Though not required to do so by the reunification plan, appellant testified that she has joined Narcotics Anonymous and attends meetings twice a week.

Appellant testified that after she decided to stop using drugs in March 1999, she saw her children almost every day until they were removed from her mother's custody. Also, she has been employed since then and has paid weekly child support to the children's grandmothers. By the date of the hearing, she had also completed a parenting skills program and found suitable housing for her family. Finally, appellant and her youngest child's father married on September 9, 1999. The evidence shows that appellant's new husband is stable and supports her efforts to remain drug-free and be a good parent.

Appellee urges this Court to disregard all positive efforts made by appellant after the petition to terminate her rights was filed and to look to appellant's past as evidence of what she will do in the future. Though we agree that appellant's past conduct was far from exemplary, her past unfitness, alone, is insufficient to terminate her right to custody.[14] "A finding of parental unfitness must be based on present circumstances."[15]

Appellee cites several cases wherein this Court has been unpersuaded by evidence of a parent's recent improvements. In those cases, however, there was also present clear and convincing evidence that the cause of the children's deprivation would likely continue or would not likely be remedied. In *In the Interest of R. N.*,[16] a psychologist testified that the mother suffered from major depression, post-traumatic stress disorder, and a personality disorder when he examined her in 1993. Further, the psychologist testified that her pattern of stabilizing the household when the children were away but then becoming overwhelmed and incapable of meeting their needs when they were returned to her custody would likely repeat itself.[17] The cause of the deprivation in *In the Interest of L. S. D.*[18] was two-fold. A 1997 psychological evaluation revealed that the mother had personality disorders, poor tolerance for stress and pressure, and difficulty with impulse control. Also, as a result of her felony convictions of simple assault and cruelty to children, she could not independently

---

[14] *In the Interest of J. J.*, 225 Ga. App. 682; 683 (2) (484 SE2d 681) (1997).

[15] (Punctuation omitted.) *In the Interest of D. C. N. K.*, 232 Ga. App. 85, 90 (501 SE2d 268) (1998).

[16] 224 Ga. App. 202 (480 SE2d 243) (1997).

[17] Id. at 204 (1) (c).

[18] 243 Ga. App. 626 (534 SE2d 109) (2000).

care for her children because her sentence included a condition that she have no unsupervised contact with them.[19]

The child in *In the Interest of A. M. L.*[20] had been in the care of fifteen caretakers over seven years because of his mother's disabling mental disorder. There was evidence that the child had psychological problems, and at the termination hearing, the mother confessed to having so many problems that she could not deal with another's.[21] Finally, in *In the Interest of K. D. S.*,[22] there was testimony that there was no possibility that the mother would progress in the near future toward being able to care for the child. In each of these cases, there was evidence to support the trial court's finding that the cause of the deprivation would likely continue or would not likely be remedied. This evidence distinguishes these cases from the instant case.

Having reviewed the entire record, we conclude that the Department failed to prove by clear and convincing evidence that appellant is presently unfit and that the children's deprivation will continue unless her parental rights are terminated. Accordingly, we reverse the order terminating appellant's parental rights.

*Judgment reversed. Pope, P. J., and Miller, J., concur.*

DECIDED JANUARY 5, 2001.

*Christopher J. McFadden*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, John C. Shelton*, for appellee.

---

[19] Id. at 627.
[20] 242 Ga. App. 121 (527 SE2d 614) (2000).
[21] Id. at 123 (1) (c).
[22] 237 Ga. App. 865, 867 (1) (c) (517 SE2d 102) (1999).