548 S.E.2d 45 (2001)
249 Ga. App. 283
In the Interest of T.B., a child.
No. A01A0329.
Court of Appeals of Georgia.
April 19, 2001.
*46 James K. Kidd, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Attys. Gen., Anne R. Moore, Statesboro, for appellee.
Ruffin, Judge.
Appellant, the mother of T.B., challenges the sufficiency of the evidence supporting termination of her parental rights. We agree that the evidence was insufficient to support the termination order and reverse.
The record shows that the Georgia Department of Human Resources, acting through the Bulloch County Department of Family & Children Services ("DFACS"), filed a petition to terminate appellant's rights to T.B. on November 1, 1999. The Bulloch County Juvenile Court held two hearings on the termination issue, which produced testimony showing the following. In August 1997, appellant, who was pregnant with T.B., and her two young children left the home they shared with appellant's boyfriend to escape the boyfriend's violent behavior. They entered a shelter in Liberty County, where they stayed for a few weeks until authorities discovered drug paraphernalia in their belongings, arrested appellant, and took custody of the two children.[1] Appellant was later accepted into a drug rehabilitation program in Brunswick, which she apparently completed. She then entered a second drug treatment program at the Women's Place in Bulloch County, a facility that could accommodate her pregnancy.
T.B. was born on March 3, 1998, while appellant was in treatment at the Women's Place. Approximately one month later, appellant was asked to leave the facility for violating program rules.[2] Almost immediately, DFACS removed T.B. from appellant, who had told authorities that "she had no place to go." On April 6, 1998, the juvenile court ordered that T.B. be placed in foster care. A few days later, DFACS filed a deprivation petition, claiming that appellant had "persistent problems with substance abuse, domestic violence and a lack of stability." On April 28, 1998, the juvenile court found that T.B. was deprived and granted DFACS temporary custody. DFACS developed a reunification plan that required appellant to maintain contact with T.B.; give T.B. "permanency"; secure and maintain a stable, alcohol and drug free home; attend drug and alcohol counseling; attend mental health counseling; and obtain income.
After DFACS took custody of T.B., appellant went to Savannah and began looking for a job and housing. Although she applied for public housing, the waiting list was long. Between April 1998 and June 1999, she lived for short periods with friends in Savannah including the individual she left in 1997 for domestic violenceand at a motel. In May 1998, she began working as a store manager at Family Dollar, but was fired in August 1998 because she had no reliable transportation to travel between stores, as her job duties required. Appellant remained unemployed until November 1998, then took another job in Savannah, which she held until January 1999. In July 1999, appellant moved to the Atlanta area, where she accepted a job with an insurance company. Although appellant initially lived with her cousin, she moved into her own apartment in September 1999. Appellant was still working with the insurance *47 company on May 8, 2000, the date of the last hearing on the termination petition. She also lived at the same apartment, but was looking for a larger apartment. Appellant's boss at the insurance company testified that appellant received a very good work evaluation and "does a great job."
While appellant lived in Savannah, she visited T.B. in Bulloch County approximately once every month, though the reunification plan required two visits per month. After she moved to Atlanta, appellant visited T.B. only once between July 1999 and January 2000. It appears, however, that DFACS sent T.B. to live with a relative in Nebraska in October 1999. Appellant testified that her job duties prevented her from visiting T.B. more often, especially during her first few months in Atlanta, when she was in a 60-day probationary period with her job. She admitted that T.B. does not recognize her as "mother," but asserted that she has a "connection" with the child that developed during their visits.
A DFACS caseworker testified that appellant did not complete her reunification plan goals. According to the caseworker, appellant went "from job to job, and a lot of times she didn't have a job at all." She established a stable home occasionally, but often moved from place to place. In addition, DFACS had no record that appellant attended alcohol or drug counseling, and the only record of mental health counseling was a psychological evaluation obtained by appellant. Appellant also failed to keep DFACS informed about her address changes and did not visit T.B. every two weeks, as required by the reunification plan.
Appellant testified that she attended mental health counseling while she was in Savannah and spent two weeks in a drug recovery program in July 1998. She completed a parenting class in 1998 and took drug screens when requested by DFACS. All drug screens were negative, except one which was positive for cocaine in September 1998. She testified at the first termination hearing that she was currently involved in drug and alcohol counseling and stated at the second hearing that she was attending mental health therapy.
On March 6, 2000, the juvenile court entered its order terminating appellant's parental rights to T.B. In particular, the court found "a lack of parental care and control [by appellant] as specifically evidenced by the failure to maintain a stable home environment." It further noted that the "evidence presented showed a history and pattern of instability." The juvenile court concluded that T.B. was a deprived child, that lack of parental care and control by appellant caused the deprivation, and that "the conditions and causes of the deprivation are likely to continue and will not be remedied."
1. Before a juvenile court terminates parental rights, it must undertake a two-step analysis:
First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.[3]
On appeal, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated.[4]
In its termination order, the juvenile court noted a "history and pattern of instability" surrounding appellant. It found that she had lived at seven different residences since April 1998, lost a job in September 1998, *48 tested positive for cocaine that same month, failed to abide by the reunification plan's visitation schedule, did not complete required counseling, and stopped attending case reviews with DFACS. According to the juvenile court, this instability demonstrated "a lack of parental care and control."
Nothing in the record, however, provides clear and convincing evidence that appellant's lack of proper parental care and control is likely to continue here. Instead, the evidence revealed that appellant secured a job with an insurance company in July 1999 and was still a valued employee in May 2000, when the juvenile court held its last hearing. Appellant obtained an apartment in September 1999, where she remained the following May, and had enrolled in mental health and substance abuse counseling. The record further shows that appellant paid over $700 in child support for T.B. between February and May 2000 and that appellant spoke frequently with the individuals caring for T.B. in Nebraska.
We have noted that "[p]ast conduct of the mother may reflect whether the conditions of deprivation are likely to continue" and that a mother's "recent attempts to put her life in order" may be unconvincing.[5] These general statements, however, do not fit every case; they are not absolutes.[6] The evidence below established that well before DFACS filed its termination petition in November 1999, appellant began stabilizing her life, and she continued those efforts throughout the ensuing months. Appellant's recent conduct cannot be characterized as mere "positive promises which are contrary to negative past fact."[7]
Under the circumstances of this case, no rational trier of fact could find clear and convincing evidence that appellant's instabilityand the resulting lack of parental care and controlwas likely to continue.[8] Accordingly, the juvenile court erred in terminating appellant's parental rights to T.B.
2. Our decision in Division 1 renders appellant's remaining enumeration of errors moot.
Judgment reversed.
JOHNSON, P.J., and ELLINGTON, J., concur.
NOTES
[1] This appeal does not concern custody of these two children.
[2] According to appellant, she was asked to leave because she had "complications" with certain program participants and she took two diapers from her roommate, apparently without the roommate's permission.
[3] (Footnotes omitted.) In the Interest of V.M.T., 243 Ga.App. 732, 735-736(3), 534 S.E.2d 452 (2000).
[4] In the Interest of S.H.P., 243 Ga.App. 720, 721, 534 S.E.2d 161 (2000).
[5] (Emphasis supplied.) In the Interest of K.D.S., 237 Ga.App. 865, 866(1)(c), 517 S.E.2d 102 (1999).
[6] See In the Interest of L.J.L., 247 Ga.App. 477, 480, 543 S.E.2d 818 (2001) (2001) (noting that "past unfitness, alone, is insufficient to terminate [a parent's] right to custody").
[7] (Punctuation omitted.) In the Interest of D.I.W., 215 Ga.App. 644, 646(1), 451 S.E.2d 804 (1994).
[8] DFACS notes that "in considering recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation." (Punctuation omitted.) In the Interest of L.S.D., 243 Ga.App. 626, 628, 534 S.E.2d 109 (2000) (punctuation omitted). The record, however, must still reflect clear and convincing evidence that the cause of the deprivation is likely to continue. See id.; see also L.J.L., supra. The evidence in this case does not support such a finding.