A01A0867. IN THE INTEREST OF S. E. L., a child.
(555 SE2d 115)

POPE, Presiding Judge.

The father of S. E. L. appeals the termination of his parental rights. He contends there was insufficient evidence to support the termination order.

On appeal, we must determine

> whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.

(Citations and punctuation omitted.) *In the Interest of C. L. R.*, 232 Ga. App. 134 (1) (501 SE2d 296) (1998).

Mr. L. fathered two children with Ms. M. out of wedlock. The first child, S. L. M., was born on August 1, 1998. Ms. M. has a history of not adequately providing for her children. S. L. M. was her ninth child, and her rights to all of her other children had been terminated. Shortly after that child was born, the Cobb County Department of Family & Children Services (DFCS) took custody. The mother quickly consented to the termination of her parental rights. At one point, S. L. M. was returned to Mr. L., and Mr. L. was clearly instructed that Ms. M. could not be allowed around the child. But he continued to have a sexual relationship and friendship with her. At a subsequent mediation session, Mr. L. consented to the termination of his parental rights to S. L. M., who was only 13 months old at the time.

Unbeknownst to Mr. L., when he relinquished rights to S. L. M., Ms. M. was already pregnant with S. E. L., who was born at least two months premature on December 6, 1999. The mother tested positive for cocaine, alcohol, and antidepressants at the time of the birth. The child needed blood transfusions and had to stay in the hospital for

three months. The child has asthma and has needed an apnea monitor from birth through at least the date of the hearing that is the subject of this appeal.

Mr. L. did not find out about the pregnancy until Ms. M.'s mother told him when the child was born. Although Mr. L. appeared at the hospital for the birth and visited the child there on a couple of occasions thereafter, neither he nor Ms. M. appeared in court for two hearings regarding the child during the child's hospitalization. At these hearings, based on the mother's known drug use and lack of parenting skills, and on the father's continued association with the mother, the Juvenile Court of Cobb County placed the child in the custody of DFCS and held that the child was deprived.

On January 13, 2000, DFCS developed a case plan designed to provide permanent options for the child. The plan called for reunification with Mr. L.; however, DFCS had a concurrent plan to terminate the parents' rights. Mr. L. signed the case permanency plan. The plan provided that Mr. L. had to fulfill his support obligations, both financial and medical, while the child was in foster care, that he obtain permanent employment, that he obtain permanent housing, and that he legitimate the child. DFCS caseworkers told Mr. L. that he also needed to obtain training on the use of an apnea monitor and cardiopulmonary resuscitation (CPR) skills in order to be able to care for the child's medical needs.

On March 16, 2000, DFCS filed a petition to terminate Ms. M.'s and Mr. L.'s rights as parents to the child. On April 11, 2000, a citizens review panel conducted a case review and recommended termination of parental rights. The final hearing was held on November 9, 2000. At the hearing, Ms. M. consented to termination of her parental rights. On November 27, 2000, the court issued a detailed order terminating Mr. L.'s right to parent S. E. L.

1. OCGA § 15-11-94 (formerly § 15-11-81) establishes a two-step process for considering parental rights cases. The court is first required to determine whether there is clear and convincing evidence of parental misconduct or inability. If there is, the court considers whether termination of parental rights is in the best interest of the child. *In the Interest of C. D. A.*, 238 Ga. App. 400, 401 (519 SE2d 31) (1999).

2. Under the first step of the test,

[a] finding of unfitness must center on the parent alone, that is, can the parent provide for the child sufficiently so that the government is not forced to step in and separate the child from the parent. A court is not allowed to terminate a parent's natural right because it has determined that the child might have better financial, educational, or even moral

> advantages elsewhere. [Cit.] Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.

*Carvalho v. Lewis*, 247 Ga. 94, 95 (274 SE2d 471) (1981). Furthermore, past unfitness alone is insufficient; "[c]lear and convincing evidence of present unfitness is required. [Cits.]" *In re A. J. M.*, 169 Ga. App. 477, 478 (313 SE2d 495) (1984). The juvenile court must determine parental misconduct or inability by finding that each criterion of OCGA § 15-11-94 (b) (4) (A) (i) through (iv) has been met.

(a) The court must first find that the child is deprived. OCGA § 15-11-94 (b) (4) (A) (i). When the juvenile court awarded temporary custody to DFCS, it found that the child was deprived and entered an order to that effect, which the father did not appeal. Accordingly, he is bound by that finding. *In the Interest of C. J. V.*, 236 Ga. App. 770, 774 (513 SE2d 513) (1999).

(b) The court must next find that a lack of proper parental care or control is the cause of the deprivation. A lack of proper care may be established by showing, among other things, "past physical, mental, or emotional neglect of the child or of another child by the parent." OCGA § 15-11-94 (b) (4) (B) (v). The court may also consider failure to comply with a reunification plan. *In the Interest of J. W. H.*, 245 Ga. App. 468, 469 (1) (a) (538 SE2d 112) (2000).

Here, Mr. L.'s actions related to S. L. M. provide evidence of neglect of that child, and therefore evidence of a lack of proper care of S. E. L. Further, there was unrebutted evidence that Mr. L. failed to support or offer to support S. E. L. while the child was in foster care or to pay for the child's medical needs despite the fact that the child required two surgeries. He admitted that DFCS caseworkers asked him to obtain training on the use of an apnea monitor and CPR skills, but that he never did. Mr. L. also stated that his family had a cure for asthma that involved the child drinking juice from a coconut and then burying the coconut, and that he would not rule out treating S. E. L.'s asthma in this manner. With regard to permanent employment, although Mr. L. was drawing workers' compensation for a job-related injury, he signed the case plan long after his injury and thereby agreed to obtain employment. Yet he failed to even search for employment during the entire time at issue.[1]

Finally, one of the court's and DFCS's major concerns was Mr.

---

[1] Mr. L. has not been employed since 1998. He injured his left shoulder at that time and is still recovering. Although he is incapable only of lifting more than 35 to 40 pounds on one side, he claims that he is not qualified to do any work other than construction because he has only an eighth grade education. But, he has never applied for other work. And, he claims that he is not so disabled that he could not take care of the baby. His only source of income is workers' compensation payments of $266 per week. He has no savings.

L.'s failure to keep his distance from Ms. M. because of her manifest inability to care for a child. Although he denied that they have a relationship, during cross-examination, Mr. L. admitted that he could not guarantee that he would stay away from Ms. M. in the future.

Mr. L. argues that DFCS never identified a specific amount of money that he should pay for support and he was never ordered by a court to pay. But Mr. L. had, at a minimum, a statutory duty to provide support, OCGA § 19-7-2, and his lack of initiative is compelling support for the conclusion that Mr. L. is not an able parent. And though Mr. L. argued that DFCS failed to take reasonable efforts to help him reunify with S. E. L., it is Mr. L. who failed to comply with the reunification plan given to him.

Although there is a factual dispute about whether Mr. L. was given an adequate opportunity to bond with the child,[2] the above facts are a sufficient basis upon which a rational trier of fact could have found clear and convincing evidence that Mr. L.'s lack of proper parental care or control was the cause of S. E. L.'s continued deprivation. See OCGA § 15-11-94 (b) (4) (A) (ii).

(c) The court must next find that there is a likelihood that the cause of deprivation will continue. OCGA § 15-11-94 (b) (4) (A) (iii). Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to their parent. *In the Interest of C. W. D.*, 232 Ga. App. 200, 204 (1) (501 SE2d 232) (1998). Here there was evidence that Mr. L. had not taken any steps to care for his child's medical needs, he would not rule out using his coconut asthma remedy on the child, he had not provided any financial support, and he could not guarantee that he would keep the child away from Ms. M. This authorized the court to find by clear and convincing evidence that the deprivation is likely to continue or will not likely be remedied.

*In the Interest of D. C. N. K.*, 232 Ga. App. 85 (501 SE2d 268) (1998), is distinguishable. There, the fact that the two children involved would no longer be subjected to their physically abusive mother meant that "the primary cause of the lack of proper parental care and control is not at all likely to continue. . . ." Id. at 90. But in the present case, Mr. L. had yet to receive the proper medical training for the child and could not assure the court that he would avoid the mother or that he would provide appropriate medical care for the child.

---

[2] Mr. L. claims that he was not allowed to visit the child between March 2000, after it left the hospital, and August 2000. There was some corroboration of this testimony. Between August and the November hearing, Mr. L. visited the child once a month except for one month, when he claimed to be ill. But, this makes only three visits at most, and he lived very close to the DFCS offices. Furthermore, Mr. L. was responsible for initiating visits and is therefore responsible for his own lack of diligence.

(d) The court also found that continuation of the deprivation would likely cause harm. Combined with the evidence of deprivation, the circumstances authorized the court to make that finding. See *In the Interest of K. L.*, 234 Ga. App. 719, 722 (507 SE2d 542) (1998).

Mr. L. also contends that the trial court applied the wrong standard when it concluded that there is a "strong presumption that Mr. [L.] will not be able to properly parent this child in the future." However, the court's findings of law clearly show that it knew, understood, and applied the correct standard of clear and convincing evidence.

3. Under the second step of the test, the court must determine whether termination is in the best interest of the child. " 'Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest.' [Cit.]" *In the Interest of C. N. H.*, 238 Ga. App. 50, 53-54 (2) (517 SE2d 589) (1999).

The father's lack of financial and proper medical support, together with his continued association with the mother, authorizes the conclusion that termination is in S. E. L.'s best interest. Further, Novella Bolden, an adoptions caseworker for DFCS, testified that both S. L. M. and S. E. L. were placed in the same foster home and that the foster parents desire to adopt both children. In addition, the guardian ad litem recommended placement with the foster parents.

Contrary to Mr. L.'s contention, this is not a case where the only ground for finding that termination was in the child's best interest is that the parent had a substandard manner of living. See *Shover v. Dept. of Human Resources*, 155 Ga. App. 38 (270 SE2d 462) (1980).

4. Mr. L. asserts that the trial court also erred by finding abandonment. This question is moot because, as shown above, there are sufficient grounds for termination without a finding of abandonment.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED OCTOBER 5, 2001.

*Clark & Justice, Joseph T. Justice, O'Brien & Koontz, David J. Koontz*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Sanders B. Deen*, for appellee.