569 S.E.2d 628 (2002)
256 Ga. App. 745
In the Interest of J.M. et al., children.
No. A02A1450.
Court of Appeals of Georgia.
July 26, 2002.
Carter & Richbourg, Joseph I. Carter, Tifton, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Attys. Gen., Simpson & Cross, Melanie Barbee-Cross, Tifton, for appellee.
BLACKBURN, Chief Judge.
Following the juvenile court's extension of an order granting temporary custody of J.M. and J.W. to the Department of Family & Children Services (DFACS), the children's mother appeals, contending that: (1) DFACS failed to file a properly verified petition for extension of custody and (2) the evidence was insufficient to support the extension of custody. OCGA § 15-11-58(n). As DFACS admits that it provided no evidence that any of the reasons for the initial removal of the children from appellant's home existed at the time of the extension hearing, we are constrained to reverse this case.
This is the second appearance of this case before us. We have previously reversed the juvenile court's termination of appellant's parental rights for lack of clear and convincing evidence that the continued relationship of appellant with the children would likely cause serious physical, mental, emotional, or moral harm. In the Interest of J.M.[1] In that case, we set forth the underlying facts of this matter as follows:
In October 1993 when J.W. and J.M. were three and five years old respectively, DFACS removed the children from the care of [appellant] on the grounds that she was not providing primary care and supervision, that there was alcohol use and domestic violence in the home, and that she frequently left the children in the care of others with her whereabouts unknown. Over the next seven years DFACS created ten reunification plans, requiring [appellant] to maintain her mental health, to maintain her parent-child bond with the *629 children, to maintain a safe and sanitary home, to remain alcohol and drug free, and to demonstrate appropriate parenting skills. She failed to maintain a safe and sanitary home, failed to display appropriate parenting skills, and twice tested positive for drugs. She generally met the other two plan goals, maintaining fairly regular contact with the children except when incarcerated (once incarcerated for a period of nine months) and meeting her mental health needs. Evidence showed that during a 76-day period when she was allowed temporary physical custody of J. M., she (1) permitted him without excuse to miss nine days of school (he had missed only one day before this), (2) was twice incarcerated for a total of eleven days, and (3) was confined for five days to a psychiatric ward for manic depression. Over the years she maintained irregular contact with DFACS, exhibited irrational behavior, threatened caseworkers, and was arrested or convicted at various times for distributing obscene material, for stalking, for prostitution, for criminal trespass, and for obstructing an officer. In October 2000, the juvenile court held a hearing to consider a petition to terminate her rights, which petition was granted.
Id. at 380-381, 554 S.E.2d 533.
Subsequent to our reversal of the termination of appellant's parental rights in this prior case, DFACS filed a petition with the juvenile court to extend temporary custody of appellant's children. After a hearing, the juvenile court determined that J.M. and J.W. continued to be deprived and extended DFACS' custody over them. The children's mother appeals this ruling.
At the time of the hearing to extend temporary custody held on December 5, 2001, a nonreunification case plan remained in effect for appellant and her children. DFACS was providing no services to appellant other than visitation, and there were no plans to change appellant's case plan goals to reunification. From the time of the termination hearing, almost a year earlier, DFACS had not taken any steps to monitor appellant.
During the hearing, Sonya Ash, the caseworker assigned to appellant's case since October 2000, testified that appellant's behavior had been erratic in September, October, and November 2001. Ash explained that appellant had been calling her and other DFACS officers repeatedly about her children. In September 2001, appellant called Ash at her home, complained about her case, and then informed Ash that she had her phone number, she knew where she lived, and she knew that she had a son. In addition, appellant repeatedly called the homes where her children had been placed. At one point, appellant showed up at the group home where one child had been staying and masqueraded as a social worker seeking information about the home. Appellant's apparent intent was to visit her son in contravention of the home's policies. Ash further testified that this child's placement in a group home had worked out fine until appellant started visiting him. Ash, however, never testified what these problems were, and we have no record of them to review.
Ash testified that, as a result of the nonreunification plan, DFACS had not attempted to gather any evidence since October 2000 to determine whether appellant had continued to use alcohol, be involved in acts of domestic violence, or leave the children with inadequate supervision. Ash testified that, once DFACS issues a nonreunification plan, its policy is to discontinue working with the parent and cease all investigations of that parent's living environment. As such, Ash admitted that DFACS had no evidence on which it could state that any of these problems continued to exist. Ash did maintain, however, that appellant exhibited erratic, aggressive behavior by calling constantly to inquire about her children.
When asked to describe any changes in appellant's behavior since the time of the prior termination hearing, Ash responded: "She seems a little bit more aggressive since the appeal was granted. She wants her children back with her. And she makes that very plainly clear to everybody in our Agency and State office and anyone else who will listen to her case."
With regard to appellant's mental health, the record shows that DFACS asked appellant to submit to a psychological test prior to *630 the hearing, but she refused to do so unless the test was administered by her own psychiatrist. During the hearing, however, appellant admitted that she has bipolar mood disorder and that it is a permanent illness. She continues to seek treatment for this problem, as she has throughout the time that her children have been in DFACS' custody.
During her testimony, appellant admitted that she had begun investigating individuals involved in her case, including DFACS workers and the juvenile court judge presiding over her case. Appellant explained that she was learning to investigate people in order to "find [her] children if [she] never could see them again."
Based on this evidence, the trial court determined that the children continued to be deprived and extended DFACS' temporary custody over them.
"On appeal from a juvenile court's order finding deprivation, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the [children were] deprived." (Punctuation omitted.) In the Interest of M.L.C.[2] We neither weigh evidence nor determine the credibility of witnesses. In the Interest of C.C.[3]
Pursuant to OCGA § 15-11-58(n)(3), an extension of custody in cases such as this must be "necessary to accomplish the purposes of the order extended." The evidence provided at the extension hearing was insufficient to prove such necessity because DFACS, by its own admission, had wholly failed to gather any evidence since the termination hearing over a year earlier. Despite this Court's earlier reversal of its actions for lack of evidence, DFACS did nothing to make its case. DFACS' only claim was that appellant's behavior was erratic because she constantly called to inquire about her children. Appellant's zeal to have her children returned, however, is not a ground favoring a finding of deprivation.
Without any evidence of the effect on appellant's children if they were returned to her care, we have no choice but to reverse the trial court in this case because the evidence simply does not demonstrate that any rational trier of fact could have found by clear and convincing evidence that the children were deprived at the time of the hearing. DFACS' argument that appellant continued to suffer from bipolar disorder does not alter this fact. "The definition of a deprived child ... focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Punctuation and emphasis omitted.) In the Interest of D.E.K.[4] See also In the Interest of C.C., supra (evidence insufficient to show deprivation despite mother's mental health problems).
Judgment reversed.
JOHNSON, P.J., and Miller, J., concur.
NOTES
[1] In the Interest of J.M., 251 Ga.App. 380, 554 S.E.2d 533 (2001).
[2] In the Interest of M.L.C., 249 Ga.App. 435, 436(2), 548 S.E.2d 137 (2001).
[3] In the Interest of C.C., 249 Ga.App. 101, 547 S.E.2d 738 (2001).
[4] In the Interest of D.E.K., 236 Ga.App. 574, 577, 512 S.E.2d 690 (1999).