A03A1601. IN THE INTEREST OF A. B., a child.
(589 SE2d 264)

ADAMS, Judge.

The biological mother of A. B. appeals an order entered by the Juvenile Court of Gwinnett County that found A. B. deprived. She contests the sufficiency of evidence as to the finding of deprivation and challenges the state's refusal to create a reunification plan.

On appeal from a deprivation order, we must view the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. *In the Interest of B. M. B.*, 241 Ga. App. 609 (527 SE2d 250) (1999). In reviewing a court's finding of deprivation, we defer to that court's factfinding and affirm unless the appellate standard is not met. *In the Interest of S. S.*, 232 Ga. App. 287, 289 (501 SE2d 618) (1998).

So viewed, in September 2001, the appellant had custody of her three children, D. B. then age nine, R. B. age six, and J. B. age three. After allegedly receiving a report that appellant's live-in boyfriend had physically abused R. B. and J. B., the Department of Family and Children Services (DFACS) purportedly began an investigation, but as of October 18, 2001, DFACS had not reached any conclusion. On October 18, appellant's boyfriend beat three-year-old J. B. so severely that she died. After that death, appellant sent her other two children to live with their grandmother in Arkansas from where this state had them picked up and returned to Georgia.

After the appellant's boyfriend's arrest for murdering her daughter, she allegedly visited him in jail and sent him letters. The state charged her with three counts of child cruelty for aiding and abetting in her daughter's death. During the time that her boyfriend remained incarcerated, appellant became pregnant by another man and gave birth to A. B., the subject of this action, on September 12, 2002.[1] Shortly after A. B.'s birth, he was taken into emergency shelter care on September 23, 2002, because his mother faced felony charges and his half-sibling had been murdered by his mother's then boyfriend.

The hearing on this case was combined with issues relating to

---

[1] The putative father has had no involvement with A. B. and is believed to be living in Chicago, Illinois. He is not a party to this appeal.

A. B.'s half-siblings, D. B. and R. B., and the juvenile court took judicial notice of prior evidence and factual findings from those cases. The sole witness to testify at the consolidated hearing was Dr. Elizabeth Moye, the psychologist treating D. B., then age ten, and all of her testimony concerned D. B. She testified that D. B. was "acutely psychotic" and extremely unstable. Dr. Moye said she had no specific recommendation as to whether the mother should be allowed visits with D. B., but she had some concerns because he "is still so unstable" and is "very angry" at the mother. Dr. Moye testified that D. B. worried that his mother's boyfriend "was going to send somebody to kill him." As to whether or not D. B. had, in fact, let his mother know about the boyfriend's abusive treatment, Dr. Moye testified, "I'm not sure what the truth is."

After Dr. Moye completed her testimony, the hearing turned to A. B., and no additional evidence was proffered. The state and A. B.'s guardian ad litem asked that A. B. be found deprived and that DFACS maintain custody of him. In adjudicating the status of A. B., the juvenile court found clear and convincing evidence that A. B. is deprived within the meaning of OCGA § 15-11-2 (8) and "in need of the court's protection, supervision and care to ensure his health, safety and welfare." Noting that his mother still faced "felony charges of child cruelty in aiding and abetting in the death of her daughter," the court decided that a return to the home would be contrary to A. B.'s welfare. The court found that "[t]he child is deprived because the mother failed to protect the child's siblings from physical abuse, which eventually resulted in the death of his sister." The juvenile court concluded,

> [b]ased on the Court's prior findings that the mother tried to conceal the identity of the perpetrator in her daughter's death, and then hindered the investigation by sending her remaining children to her mother's in Arkansas, the mother is to have no visitation with the child and the Department does not need to pursue reunification efforts with regard to the mother.

1. A. B.'s mother contends that the juvenile court erred in finding the existence of clear and convincing evidence to support a finding that A. B. was deprived in her care and custody. She argues that all of the purported evidence of deprivation related to her other children and not to A. B. and to events that occurred before the birth of A. B. She claims that "the perpetrator of those [earlier] actions is incarcerated and no longer in the home." She contends that while one's past conduct may properly be considered as a predictor of future conduct, the trial court needed to supplement that consideration with a find-

ing that deprivation is likely to continue but failed to do so. See *In the Interest of T. B.*, 249 Ga. App. 283, 286 (548 SE2d 45) (2001).

"[A] trial court may take judicial cognizance . . . of records on file in its own court." *Petkas v. Grizzard*, 252 Ga. 104, 108 (312 SE2d 107) (1984). In determining whether A. B. was a deprived child as defined by statute, the juvenile court, however, took judicial notice of evidence from the 72-hour hearing conducted by a different judge. Since the appellate record does not contain transcripts of the other hearings or the records from any other case, it is not clear how much reliance was placed on evidence not before that court.[2]

Moreover, the record before this Court, which contains a mere 15 pages, is sketchy at best and replete with hearsay and unsubstantiated statements. The transcript consists primarily of argument and contains the testimony of a lone witness, Dr. Moye, who gave no testimony about A. B. and testified that she was not sure that D. B. had told his mother about the boyfriend's abuse.

It is undisputed that the appellant did not abandon A. B. or place him for care or adoption in violation of the law. See OCGA § 15-11-2 (8) (B), (C). Thus, at issue is whether A. B. is a "deprived child" meaning that he "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (8) (A). But the state took custody of A. B., within days of his birth, and apparently made absolutely no plans for the reunification of mother and child. As such, the record lacks clear and convincing evidence that: "(ii) [t]he lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) [s]uch cause of deprivation is likely to continue or will not likely be remedied; and (iv) [t]he continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-94 (b) (4) (A) (ii)-(iv). Although it may well be that A. B. is a "deprived child" and that the deprivation is ongoing due to maternal inability to properly care for and protect him, we cannot say that the record before us contains clear and convincing evidence of the statutory elements. Compare *In the Interest of G. G.*, 253 Ga. App. 565, 569-570 (560 SE2d 69) (2002).

2. A. B.'s mother also contends that the juvenile court erred in finding that "reasonable efforts" were not required to prevent the removal of A. B. from her home and by finding that reunification efforts were not required to return A. B. to her. She claims that the state failed to satisfy all four prongs as required by OCGA § 15-11-94

---

[2] The order entered after the 72-hour hearing and the one under appeal here were drafted not by the factfinder but by counsel for DFACS.

(b) (4) and offered no evidence that the deprivation is likely to continue and that such deprivation would cause harm to A. B.

With the child's health and safety paramount, the law requires that "reasonable efforts shall be made to preserve and reunify families," to avoid the placement of a child in foster care, to eliminate the need for removal from the child's home, and to make it possible for the child to return safely to his home. OCGA § 15-11-58 (a) (2) (A), (B). Reasonable efforts toward reunification with a parent need not be made when a court of competent jurisdiction has determined that:

> (A) [t]he parent has subjected the child to aggravated circumstances which may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse; (B) [t]he parent has: (i) [c]ommitted murder of another child of the parent; (ii) [c]ommitted voluntary manslaughter of another child of the parent; (iii) [a]ided or abetted, attempted, conspired, or solicited to commit murder or voluntary manslaughter of another child of the parent; or (iv) [c]ommitted a felony assault that results in serious bodily injury to the child or another child of the parent; or (C) [t]he parental rights of the parent to a sibling have been terminated involuntarily.

OCGA § 15-11-58 (a) (4) (A)-(C).

Here, the record does not establish the existence of any of these "aggravated circumstances." When DFACS decided against reunification, no court of competent jurisdiction had involuntarily terminated the appellant's parental rights to her other children. See *In the Interest of S. E. L.*, 251 Ga. App. 728, 730 (555 SE2d 115) (2001) (in determining issue of deprivation, court may consider past physical, mental, or emotional neglect of the child or of another child by the parent). Although the state admittedly relied upon subsection (iii) and claims that criminal charges remain pending against the appellant, the state did not tender a copy of the indictment to show the nature of those charges. Nor did the state present clear and convincing evidence that appellant committed those offenses which appear to have resulted from appellant's conduct after J. B.'s death and not prior to it. "A finding of parental unfitness must be based on present circumstances." (Punctuation and footnote omitted.) *In the Interest of L. J. L.*, 247 Ga. App. 477, 480 (543 SE2d 818) (2001) (termination order reversed due to lack of evidence). Here, the record lacks such evidence.

"Although we are reluctant to reverse a trial court's determination, 'there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child

relationship. It must be scrutinized deliberately and exercised most cautiously.' " (Citation omitted.) *In the Interest of K. J.*, 226 Ga. App. 303, 306 (1) (486 SE2d 899) (1997). But here, due to the absence of any plan for reunification, the permanent severance of the parent-child relationship would seem inevitable, a foregone conclusion. Although the appellant's actions during the aftermath to J. B.'s death, if proven, and her acts or omissions before that death may well form a legitimate basis for severing her parental rights, the evidence provided to this Court does not meet the requirements for nonreunification. See *In the Interest of J. M.*, 256 Ga. App. 745, 748 (569 SE2d 628) (2002). Notwithstanding the state's compelling rhetoric, we have not been able to find evidence in the appellate record to support the state's claim in its brief that "the juvenile court previously had found that Appellant was aware of her then-boyfriend's abuse of her children."[3] In the absence of evidentiary support for the juvenile court's factfinding, we must reverse the judgment below and remand for further proceedings consistent with this opinion. Compare *In the Interest of J. V.*, 241 Ga. App. 621, 626-627 (526 SE2d 386) (1999) (juvenile court set forth specific facts in its order on which to base its conclusions).

The intervention of the state into the parent-child relationship is a matter of the utmost seriousness, and thus the legislature has imposed upon the state the burden of proving its allegations of deprivation by clear and convincing evidence. The record in this case, however, reflects a proceeding more in the nature of an informal conference than the requisite evidentiary hearing. A. B., by the circumstances of his birth, stands in a different position from that of his half-siblings, yet no attempt was even made to present evidence concerning his case. Each child in these circumstances deserves a full, separate, and thoughtful review by the juvenile court of the issues relating to him. The proceeding in this case fell far short of this standard. And while it may be that the trial court, the parties, and the attorneys involved in this matter knew more about the case than the paltry record before us reflects, we take this opportunity to remind counsel of the gravity of the issues presented and of their responsibility in these matters, including, but not limited to, making a record for this Court to review in each case.[4]

---

[3] The order filed after the 72-hour hearing merely stated, "[s]he *allegedly* knew her boyfriend was physically abusive towards the children but allowed him to remain in the home and care for the children unsupervised." (Emphasis supplied.)

[4] We note that the guardian ad litem moved to stay this appeal so that the record could be supplemented through consolidation of this case with the proceedings relating to the other children. The mother opposed this motion, and the guardian withdrew it. Although the state bears the burden of proof in this case, it filed no briefs in connection with this motion and made no attempt to supplement the record with any evidence from the other proceedings.

*Judgment reversed. Andrews, P. J., concurs. Barnes, J., concurs in judgment only.*

DECIDED OCTOBER 21, 2003.

*Debra W. Hale,* for appellant.
*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, John L. Welsh II, Jean S. Martin, Edgar J. Perkerson III,* for appellee.