A92A2291, A92A2292. IN THE INTEREST OF M. M., a child
(two cases).
(429 SE2d 132)

COOPER, Judge.

In separate cases, the mother and father of M. M. appeal from a juvenile court order terminating their parental rights. Both appellants enumerate as error the sufficiency of the evidence and the admission of a report by the court-appointed special advocate. In addition, the father contends that a report by the judicial citizen review panel was

erroneously admitted.

M. M. was born on July 19, 1988 to appellants, who were not married. The Department of Family & Children Services ("DFACS") became involved in the case on April 6, 1989, when appellant mother began serving a prison sentence for forgery and financial transaction card fraud. M. M. was placed in foster care because appellant father was already incarcerated in the state prison system for the offenses of armed robbery, robbery and giving a false statement.

Upon appellant mother's release from prison on October 26, 1990, she met with a caseworker from DFACS and entered into a reunification plan which required her to maintain stable employment, comply with the conditions of her probation and parole, maintain suitable housing for herself and M. M., arrange for adequate day care and have regular visits with M. M. Appellant mother complied with all of the requirements of her reunification plan except that her apartment was too small to accommodate M. M. and she failed to visit M. M. on a regular basis. In December 1991, DFACS, appellee herein, filed a petition to terminate the parental rights of both parents.

On March 6, 1992, a hearing was held on DFACS's petition. The caseworker assigned to M. M.'s case testified regarding appellant mother's visitation with M. M. from the time of her release from prison through the date of the hearing. Appellant mother's first visit with M. M. following her release from prison was on November 16, 1990. Subsequent visits were scheduled for November 27 and 28, but appellant mother cancelled because she had to work. Appellant mother visited with M. M. four times in December, and in January 1991, she visited M. M. four out of the five scheduled meetings. In February, appellant mother cancelled two of the four scheduled visits, once because she had to work and once because she was sick. In March, appellant mother cancelled two of the six scheduled visits, and in April, appellant mother had three overnight visits with M. M. but cancelled one visit due to illness. Appellant mother visited with M. M. twice in May but cancelled three visits. In June, appellant mother cancelled two of the four scheduled visits due to work, and in July, appellant mother visited M. M. only twice and then requested that the overnight visits cease. Appellant mother visited M. M. once in August, and then several months elapsed before appellant mother made any attempt to visit M. M. Appellant mother saw the child once in November prior to a panel review session, and no visits were scheduled in December 1991. During 1992, appellant visited with M. M. only once.

The DFACS caseworker testified that upon appellant mother's release from prison and commencement of visitation with M. M., there was some bonding between appellant mother and M. M. but that in the two visits since July 1991, there was a noticeable lack of

physical contact between M. M. and appellant mother. The caseworker also stated that it was not emotionally good for M. M. to have appellant mother drop in and out of her life. Appellant mother testified that she had to cancel several visits with M. M. due to her work schedule. She also stated that she discontinued overnight visits with M. M. because M. M.'s foster parents had reported to DFACS that M. M. made allegations of child molestation which allegedly occurred while M. M. was in appellant's custody. Appellant mother also stated that although the allegations were untrue, she did not visit with M. M. because she did not want to risk going back to prison.

Appellant father was still serving his sentence at the time of the hearing on appellee's petition, and his earliest possible release date was January 22, 1993. The DFACS caseworker testified that appellant father had a few visits with M. M., but DFACS discontinued visitation due to appellant father's failure to legitimate M. M. The caseworker also testified that appellant father made several requests to visit with M. M. and that there were several visits between M. M. and appellant father's extended family. Appellant father acknowledged that he was required to legitimate M. M. to obtain visitation privileges but stated that he was unable to do so because he did not have any money.

1. "OCGA § 15-11-81 (a) provides a two-step procedure to be followed in considering the termination of parental rights. First, the court shall determine whether there is present clear and convincing evidence of such parental misconduct or inability as provided by OCGA § 15-11-81 (b). Secondly, '(i)f there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child, . . .' [cit.]." *In the Interest of A. T.*, 187 Ga. App. 299, 301 (2) (370 SE2d 48) (1988). "Parental misconduct is determined by finding: 1) the child is deprived; 2) lack of proper parental care or control is the cause of the deprivation; 3) such deprivation is likely to continue or will not be remedied; 4) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. [Cit.] Among the factors which may be considered with regard to a child lacking proper parental care or control are: medically verifiable deficiency of the parent's mental or emotional health of such duration or nature as to render the parent unable to provide adequately for the child's needs; conviction of a felony and imprisonment which has a demonstrable negative effect on the quality of the parent-child relation; physical, mental or emotional neglect of the child. [Cit.] Another consideration is whether the parent without justifiable cause failed significantly for a period of one year or longer to comply with a court ordered plan designated to reunite the child with the parent. [Cit.]" *In the Interest of B. J. H.*, 194 Ga. App. 282 (1) (390 SE2d 427)

(1990).

The trial court made detailed and comprehensive findings regarding the above criteria as to both parents. The court found that M. M. was in a state of deprivation due to a lack of parental care and control caused by the actions of both parents; that neither parent cared to supervise M. M. or provide parental care and control for her; that the parents' lack of ability to care for M. M. began with their commission of multiple felonies prior to M. M.'s birth; that since July 1991, the mother has made no real effort to visit M. M.; that the most persuasive evidence of the lack of parental care and control is the conduct of the mother in having no visitation for such a long period of time; that the deprivation caused by the mother's failure to provide proper parental control is likely to continue into the future and is not likely to be remedied; that the father has failed to comply with the only requirement placed on him — to legitimate M. M. — so that he could visit the child; that the father has failed to communicate with the child since his incarceration; that the deprivation due to the father's actions will likely continue through January 23, 1993; that there is no evidence that the causes of M. M.'s deprivation by the father would be remedied at that time even if the father were released from prison; that the lack of parental care and supervision by the parents is likely to cause emotional harm to M. M.; that the lack of parental care and control in addition to the period of time that the deprivation has lasted has already caused some harm to M. M.; that deferring a decision in the case would not be in the best interest of M. M. due to the uncertainty surrounding the parental situation and the lack of action on the part of both parents to reunite with the child; and that the evidence authorized a finding that termination of parental rights was in the best interest of the child.

" '(T)he appropriate standard of appellate review in a case where a parent's rights to his child have been severed is "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." ' [Cits.]" *In the Interest of A. O. A.*, 172 Ga. App. 364, 365-366 (2) (323 SE2d 208) (1984). "The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review . . . is not met." *In re B. D. C.*, 256 Ga. 511, 513 (350 SE2d 444) (1986). Our review of the record reflects that there is sufficient clear and convincing evidence to support both of the findings of the juvenile court that parental inability would likely not be remedied and that termination would be in the best interest of the child. Consequently, we find no abuse of the juvenile court's discretion in granting appellee's petition.

See *In the Interest of G. K. J.*, 187 Ga. App. 443 (2) (370 SE2d 490) (1988).

2. Both appellants enumerate as error the admission of a report of the court-appointed special advocate ("CASA") on the grounds that they had no opportunity to cross-examine the special advocate as to the factual assertions contained in the report. The trial judge indicated in his order that he considered the CASA report along with all of the other evidence. However, all of the findings articulated by the trial judge were amply supported by the testimony of the witnesses at the hearing. Furthermore, the findings made by the CASA in the report were substantially the same as the evidence presented during the hearing. Therefore, even if the trial judge erred in admitting the report, we find no reversible error. *In the Interest of M. A. C.*, 244 Ga. 645 (4) (261 SE2d 590) (1979).

3. Similarly, we find no merit to appellant father's contention that the juvenile court judge erred in admitting a report by the judicial citizen review panel. The judge's findings were supported by the evidence exclusive of the review panel's report, and any error in admitting the report is not grounds for reversal. *In the Interest of M. A. C.*, supra.

*Judgments affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 10, 1993.

*Merry & Associates, Rebecca S. Merry, Anne H. Watson, Summer & Summer, Chandelle T. Summer*, for appellants.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Margot M. Cairnes, Staff Attorney, Charles W. Smith, Jr.*, for appellee.