A95A0088. IN THE INTEREST OF L. S. F. et al., children.
(458 SE2d 370)

RUFFIN, Judge.

The Fulton County Department of Family & Children Services (DFACS) petitioned the juvenile court to terminate the parental rights of the mother in three of her children. The children's father has surrendered his parental rights. The court ruled that despite the long history of deprivation, it was in the best interest of the two older children to reserve ruling on the petition for six months. The court did, however, terminate the mother's rights in the youngest child, N. T. F., and the mother appeals this part of the ruling contending there was not clear and convincing evidence that her parental rights should be terminated.

"If parental rights have been terminated by the lower court, upon appellate review this court must determine whether a rational trier of

fact could have found by clear and convincing evidence that the natural parent's rights had been lost." (Citations and punctuation omitted.) *In the Interest of J. C. J.*, 207 Ga. App. 599, 601 (428 SE2d 643) (1993). The evidence before the juvenile court follows.

In March 1989, when N. T. F. was one month old, DFACS filed a deprivation petition on his behalf. In July of that year, the juvenile court found the child to be deprived pursuant to OCGA § 15-11-81 et seq. and transferred legal custody to DFACS. At that time, the whereabouts of N. T. F.'s mother were unknown as she had failed to stay in contact with DFACS. In 1991, the custody order was extended for another two years, and in February 1993, upon a finding that the child remained deprived, the court ordered that custody remain with DFACS. Approximately three months later, DFACS filed the petition for termination of parental rights which is the subject of this appeal.

Caseworkers testified that since N. T. F. was first placed in its care, DFACS prepared case plans with specified goals to help reunite the mother and N. T. F. The plans were updated and reviewed at six-month intervals. Beginning with the first plan in 1989, each plan articulated three major goals for the mother in order to reunite with N. T. F.: 1) finding stable, suitable housing; 2) visiting the child on a regular, bi-monthly, or monthly basis; and 3) receiving psychological counseling. However, none of these goals was achieved in the ensuing five years. The mother testified that she had attempted to secure housing with three different men to whom she had been married or with whom she had been involved, but one man was imprisoned for rape, the second man left her, and the third, N. T. F.'s natural father, manages prostitutes and was a "bad influence" on her. At the time of the hearing, the mother still had not obtained housing.

In addition, the mother had not established regular visitation of N. T. F. as specified in all of the case plans. At best, her visitation could be described as sporadic, ranging from no visits to three visits in each six-month period since N. T. F. first came under the care of DFACS. Despite the mother's contention that she is making progress toward becoming a fit parent, in the seven-month period prior to the termination hearing, she made only three visits.

Finally, in 1991, the court ordered that child support of $5 per week per child be paid, but the mother failed to make any payments, save a single payment of $100 which was made one month prior to the termination hearing. Additionally, the mother failed to receive any counseling and completed only two of four parenting classes.

As recognized in the juvenile court's order, "OCGA § 15-11-81 (a) provides a two-step procedure to be followed in considering the termination of parental rights. First, the court shall determine whether there is present clear and convincing evidence of such parental misconduct or inability as provided by OCGA § 15-11-81 (b). [Second], if

there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child. Parental misconduct is determined by finding: 1) the child is deprived; 2) lack of proper parental care or control is the cause of the deprivation; 3) such deprivation is likely to continue or will not be remedied; 4) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. Among the factors which may be considered with regard to a child lacking proper parental care or control [is] . . . whether the parent without justifiable cause failed significantly for a period of one year or longer to comply with a court ordered plan designated to reunite the child with the parent." (Citations and punctuation omitted.) *In the Interest of M. M.*, 207 Ga. App. 722, 724 (1) (429 SE2d 132) (1993).

As to the first two factors, the evidence clearly showed that N. T. F. was deprived due to parental inability, such having been declared when N. T. F. was only five months old. Furthermore, there was clear and convincing evidence of these two factors by virtue of the fact that the mother failed to comply with virtually every condition of the reunification plans. Finally, "no appeal was taken from the order of the juvenile court entered in [1989] finding [N. T. F.] to be deprived and thus [the mother] is bound by that determination. [Cit.]" *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593) (1993).

The mother contends that N. T. F. cannot be declared deprived because DFACS did not make reasonable efforts to prevent or eliminate the need for the child's removal as required by OCGA § 15-11-41 (b). This argument is without merit, given that N. T. F. was first removed from his mother's home and found to be deprived when the mother was arrested for solicitation of sodomy. Further, the record is replete with efforts by DFACS to reunite N. T. F. with his mother via eight specific case plans designed to get the children out of foster care. There was also evidence of attempts to help the mother obtain housing and arrange for counseling. In short, the juvenile court was presented with clear evidence that N. T. F. was deprived and that the cause for his deprivation was lack of parental care and control.

Having determined that the court's finding with regard to the first two factors was correct and supported by clear and convincing evidence, we turn to the third and fourth factors in the determination of parental inability. Despite the court's recognition of the mother's progress in certain areas, her failure to comply with significant elements of the plans over a five-year period demonstrates that the deprivation is likely to continue and will cause serious harm to the child. The mother contends that her past deprivation cannot justify termination when there was evidence that she is currently attempting to

become a fit parent. She cites, inter alia, her attempts to travel out of state to obtain her birth certificate in order to obtain public housing, her willingness to attend counseling, and the fact that she began work to obtain a GED. However, "the past conduct of the parent is properly considered by the court in determining whether such [past] conditions of deprivation are likely to continue." (Citations and punctuation omitted.) *In the Interest of J. C. J.*, supra at 602. In addition, "[t]he decision as to a child's future must rest on more than . . . promises" and hopes which belie past behavior. *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (2) (361 SE2d 246) (1987).

Based on the evidence of the mother's past behavior and her inability to comply with significant requirements of the plan, we find that a rational factfinder could have found by clear and convincing evidence that N. T. F.'s deprivation was likely to continue and have a detrimental effect on him. Compare *In the Interest of R. M.*, 194 Ga. App. 888 (392 SE2d 13) (1990), in which the father underwent two years of court-ordered mental health treatment, completed a parenting course, regularly visited his children, paid the court-ordered child support of $200 per month, and had steady employment.

In considering the second part of the test, the best interest of the child, the trial court may consider the need for stability in the child's life. *In the Interest of J. C. J.*, supra. See also *In the Interest of M. R.*, 213 Ga. App. 460 (1b) (444 SE2d 866) (1994). "A termination hearing seeks above all else [to protect] the welfare of the child, with due regard for the rights of the natural . . . parents." (Punctuation omitted.) Id. at 465. At age five, N. T. F. has been in three foster homes. The court heard testimony from Dr. Moye, a child psychologist who had seen the child 14 times since 1992. Dr. Moye testified that N. T. F. had an excellent relationship with his present foster parents and considered them to be his family. She also testified that he was an anxious, "special needs" child who may have Attention Deficit Disorder. Dr. Moye further described N. T. F. as a child "at risk" who was very worried about the possibility of being taken away from his foster family. Based on the foregoing, the juvenile court's decision terminating the parental rights in N. T. F. was supported by clear and convincing evidence, and we find no abuse of discretion despite attempts by the mother to become a more fit parent.

*Judgment affirmed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED MAY 24, 1995.

*Hassett, Cohen & Beitchman, Daniel S. Glickman,* for appellant.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Kevin M.*

O'Connor, *Assistant Attorneys General*, Vivian D. Egan, Mary D. Hermann, for appellee.