A02A1322. IN THE INTEREST OF N. G. et al., children.
(570 SE2d 367)

BARNES, Judge.

Following a hearing, the DeKalb County Juvenile Court terminated the parental rights of the mother of N. G. and A. W. B. The mother appeals, arguing that the juvenile court lacked clear and convincing evidence that the children were without proper parental care and control. We disagree and affirm.

In reviewing a parent's challenge to the sufficiency of the evidence, we determine whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found by clear and convincing evidence that a natural parent's right to custody has been lost. *In the Interest of A. C.*, 230 Ga. App. 395,

---

[16] *Schmerber*, supra at 766.

396 (1) (496 SE2d 752) (1998). We do not weigh the evidence or determine witness credibility, but defer to the juvenile court's factfinding. *In the Interest of L. H.*, 236 Ga. App. 132, 133 (1) (511 SE2d 253) (1999).

Viewed in this light, the evidence shows that the two children came into custody of the Department of Family & Children Services (DFCS) on March 23, 1998, after their mother left them with a friend and did not return. The record in this case is voluminous because DFCS took emergency custody of the mother's other five children, then ages nine, six, three, one, and eight months, on December 4, 1991. We will review the evidence beginning with this first DFCS encounter.

On December 30, 1991, the juvenile court found the five children to be deprived because their parents "suffer from chronic substance abuse problems which interfere with their ability to provide responsible care and supervision for the children. Further, both mother and father lead unstable lifestyles." This order was not appealed.

On June 24, 1993, the juvenile court again concluded that the children were deprived, finding that the parents' whereabouts were unknown and the mother had made no substantial progress toward completing the goals in her case plan. Temporary custody of the children was continued in DFCS every six months, until guardianship of the two oldest children, then ages fifteen and twelve, was transferred to a family member in February 1998. Within two months, custody of the oldest, a girl, was transferred back to DFCS.

After DFCS took custody of N. G. and A. W. B. in March 1998, the department developed a case plan in March 1998 for the mother's reunification with these girls, who were born on December 7, 1993, and January 28, 1996. Her goals were to provide 24-hour supervision of the children, remain drug free, cooperate with DFCS, and pay child support. Steps involved in cooperating with DFCS included giving the case manager current addresses, telephone numbers, and other important information such as employment; attending panel reviews; and contacting the case manager regularly regarding progress toward these goals.

Three months later, in June 1998, a panel review recommended that the oldest girl be emancipated and the mother's parental rights in the three boys who had been in DFCS custody for seven years be terminated. On December 3, 1998, regarding these boys, the juvenile court again concluded that the three boys were deprived, finding that when a deprivation petition was filed in October 1998, the mother was in jail and had been "unable to maintain sobriety and remain drug free."

In January 1999, the court adopted DFCS's case plan for the six children still in the department's custody,[1] which recommended that the oldest girl be emancipated, the three boys be adopted, and the two girls stay with their out-of-state relative. In February 1999, DFCS filed for a custody extension and a petition to end reunification services as to the two girls, alleging the mother had not maintained regular employment and had not kept in contact with DFCS. Meanwhile, in August 1999, the juvenile court issued an order finding that N. G. and A. W. B. were deprived. That order was not appealed.

In June 1999, DFCS petitioned for termination of the mother's parental rights in the boys and in August 1999 petitioned for termination in the two youngest girls, N. G. and A. W. B. The mother's whereabouts were unknown at the time; the caseworker filed an affidavit in which she stated that she contacted the mother by pager, and the mother said she did not have a permanent place of residence, was staying with different friends, and did not have a mailing address either.

The juvenile court terminated the mother's parental rights in the boys on October 26, 1999, noting in its order that the mother consented to the termination.

The juvenile court then held a hearing on January 19, 2000, to consider extending custody with DFCS, the nonreunification petition, and the termination petition as to N. G. and A. W. B. The mother was not present, although she had been present at court the month before when the hearing was reset. Her attorney moved for a continuance, explaining that the mother was in Virginia working on obtaining public housing and was unable to attend, but the court denied the motion.

The DFCS case manager testified that the mother had had a reunification plan with the department since 1991, but had never achieved the goal of establishing a safe and stable home. While N. G. and A. W. B. were residing in Georgia under DFCS custody from March 1998 to December 1998, the mother visited them five times. The children moved to Virginia in December 1998 to live with one of the girls' paternal grandparents, who now regularly take them to visit their mother, who also moved to Virginia. The mother's contact with the caseworker had been sporadic, calling two or three months in a row and then skipping the next two or three months. Further, she had never called and said she had a residence established for the children to live in. While the caseworker tried to maintain the mother's address in her files, she was rarely successful. Although in 1998 the mother obtained Section Eight housing and received finan-

---

[1] The second oldest child remained in the custody of a relative.

cial assistance to obtain furniture, she would not allow the caseworker inside the residence during home visits in October 1998 and again in November 1998. In February 1999, no one was home when the caseworker arrived for a home visit, and in March 1999, the mother said she no longer lived there, was staying with friends, and had no permanent address. When the mother called in December 1999 to say she was trying to obtain public housing in Virginia, she had to ask the caseworker for her children's birth dates and Social Security numbers. Additionally, the mother had never met her goal of obtaining regular employment, having worked only three months out of the previous twelve, and had paid no child support in 1999. The juvenile court terminated the mother's parental rights to N. G. and A. W. B. in an order filed February 17, 2000.[2]

Determining whether parental rights should be terminated involves a two-step analysis. In the first step, the court must find parental misconduct or inability, supported by clear and convincing evidence that: (a) the child is deprived; (b) lack of proper parental care or control caused the deprivation; (c) the cause of the deprivation is likely to continue; and (d) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A) (i)-(iv); *In the Interest of L. H.,* supra, 236 Ga. App. at 132-133 (1). Further, "evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of *present* unfitness is required." (Citations and punctuation omitted; emphasis in original.) *In the Interest of R. A.,* 226 Ga. App. 18, 20 (486 SE2d 363) (1997); see also *In the Interest of D. C. N. K.,* 232 Ga. App. 85, 90 (501 SE2d 268) (1998).

If these four factors exist, then the court must take the second step and determine whether terminating parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. OCGA § 15-11-94 (a).

We must review the evidence in the light most favorable to the State to determine whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody has been lost. *In the Interest of A. C.,* supra, 230 Ga. App. at 396. In this case, ample clear and convincing evidence of the four factors established parental misconduct or inability. First, the unappealed deprivation orders of the juvenile court are sufficient to establish that the children were deprived within the meaning of OCGA

---

[2] The record indicates that the juvenile court clerk encountered some difficulty obtaining a transcript of the termination hearing, hence the lengthy delay in docketing this appeal.

§ 15-11-94 (b) (4) (A) (i). *In the Interest of B. P.*, 207 Ga. App. 242, 244 (427 SE2d 593) (1993).

Second, the juvenile court was authorized to determine that the mother's failure to comply with the reunification plan established her lack of proper parental care and control. *In the Interest of A. B.*, 251 Ga. App. 827, 830 (2) (555 SE2d 159) (2001). Here, the record amply supports the juvenile court's conclusion that the mother failed to comply with the plan. The mother argues on appeal that clear and convincing evidence did not support the trial court's finding that the children lacked proper parental care and control, as required by OCGA § 15-11-94 (b) (4) (A) (ii). She contends that she had made significant progress toward meeting her case goals when the court terminated her parental rights, citing two citizens review panel reports from January 1999 and July 1999. She further contends that DFCS failed to make a good-faith effort to reunify her with her children.

Citizens review panel reports contain hearsay that cannot be considered in determining whether clear and convincing evidence supports the termination of a parent's rights. *In the Interest of M. L. P.*, 231 Ga. App. 223, 224 (498 SE2d 786) (1998). "The citizen's review panel's findings of fact and recommendations are not legal evidence as the panel is not a court of record and its actions are not necessarily in compliance with regard to legal due process considerations." Id. Therefore, the panel review conclusions do not constitute evidence that the mother substantially complied with her reunification goals. Additionally, the State presented evidence that the mother failed to maintain regular employment, establish a home, stay in contact with the caseworker, or pay child support. Clear and convincing evidence supports the trial court's finding that the children lacked proper parental care and control.

Third, in determining whether the children's deprivation is likely to continue, the juvenile court may consider the parent's past conduct. *In the Interest of K. L.*, 234 Ga. App. 719, 722 (507 SE2d 542) (1998). In this regard, the court had an opportunity to consider evidence showing that, for nine years, the mother failed to meet the reunification goals regarding her older children. This clear and convincing evidence supports the juvenile court judge's conclusion that the children's deprivation was likely to continue.

Fourth, clear and convincing evidence showed that continued deprivation likely would harm the children. Based on the evidence presented, we find that a rational factfinder could have found by clear and convincing evidence that the children's deprivation was likely to continue and have a detrimental effect on them. *In the Interest of L. S. F.*, 217 Ga. App. 478, 481 (458 SE2d 370) (1995).

As to the second prong of the termination analysis, the evidence also was sufficient to show that termination of appellant's parental

rights was in the best interests of the two children. We have held that "the court may consider the child's need for a stable home environment and the detrimental effects of prolonged foster care. Children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Citations omitted.) *In the Interest of J. O. L.*, 235 Ga. App. 856, 858 (510 SE2d 613) (1998). Here, the evidence showed that the children had been in foster care for two years and need a stable home, and the foster parents, who are A. W. B.'s paternal grandparents, were ready to adopt both girls. Additionally, the same factors that show the mother's instability support a finding that termination of parental rights would be in the children's best interests. Id.

Accordingly, we affirm the order of the juvenile court terminating appellant's parental rights.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 16, 2002.

*Ann N. Garner*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Robert G. Nardone*, for appellee.

