608 S.E.2d 286 (2004)
270 Ga. App. 810
In the Interest of R.S., a child.
No. A04A2229.
Court of Appeals of Georgia.
December 8, 2004.
Mathias Skowranek, Stockbridge, for Appellant.
Joan Risher, for appellee.
Mary Evans-Battle, pro se.
Willie Battle, McDonough, pro se.
PHIPPS, Judge.
In June 2002, a petition was brought to terminate the parental rights of the parents of D.T. (born in January 1998) and R.S. (born in March 2000). The children have the same biological mother but different biological fathers. This is an appeal by R.S.'s father *287 from an order of the juvenile court terminating his parental rights. We find no error and affirm.
In May 2000, two-year-old D.T. was taken to a medical center and diagnosed with gonorrhea. The next day, the Henry County Department of Family and Children Services (DFCS) received a referral alleging that D.T. had been sexually abused. The mother did not cooperate with the investigation. There was evidence of medical neglect of both D.T. and R.S., and drug use, by the mother. The fathers of both children were incarcerated. Both children were placed in emergency shelter care, and complaints were filed alleging that they were deprived.
When the matter came on for a hearing in June 2000, one of the petitioners, whose daughters are the children's godmothers, was allowed to intervene; and she and her husband, the co-petitioner for termination of parental rights, were awarded temporary custody of the children. With the consent of the biological parents, the juvenile court entered an order finding the children deprived, and case plans were developed for reunification of the mother with the children.
In June 2002, the petitioners sought permanent custody of the children based on the mother's failure to complete her reunification case plans and the fathers' continued incarceration. They also petitioned for termination of the parents' parental rights. In the petitions, they alleged that R.S.'s father would be eligible for parole in August 2002 and that he was the primary suspect in the molestation of D.T. No criminal charges were brought as a result of the alleged incident.
By October 2002, R.S.'s father had been released from prison and filed a petition to legitimate his son. By agreement of the parties, the hearing on the petitions for termination of parental rights was continued until April 2003, custody of the children was continued in the petitioners, and a reunification plan was established for the fathers as well as the mother. The reunification plan, to which the parents apparently consented, required them to: submit to drug screens, no more than once a month, at the request of petitioner, and sign releases allowing her access to the results of drug screens they were then receiving as part of their probation or parole; submit to drug and alcohol assessments and follow recommendations of the assessments; obtain full-time, stable employment; pay child support through payroll deduction; attend and complete parenting classes; visit the children; and establish stable homes and provide addresses of their residences to petitioner. In addition, R.S.'s father was ordered to submit to a psycho-sexual evaluation at his expense before being allowed to visit his child, to follow any treatment recommendations, and to pay $40 per week in child support beginning November 2002. In February 2003, R.S.'s father was held in wilful contempt for failing to comply with requirements of the reunification plan.
The petition for termination of parental rights was heard in August and September 2003. Evidence was introduced showing that R.S.'s father had been abusing drugs since 1990; that he had been convicted of and given prison sentences for drug offenses in 1989, 1992, 1996, and 2000; that, following implementation of the reunification plan, he had gone "back to [his] old ways" and produced positive results on more than one of his drug screens, causing him to have to reenter a drug rehabilitation program; that he had been unable to secure stable employment (partly as a result of not being able to get along with a job supervisor); that although he had made some child support payments, he had not paid the required amount, even when he was working, and that he was substantially in arrears in his child support payments at the time of the hearings; that he never had child support deducted from his pay; that he did not submit to a psycho-sexual evaluation until a month before the last termination of parental rights hearing (partly as a result of his drug relapses); that he had thus not had any visitation with his son; that he had not followed the recommendations of the person who performed the psycho-sexual evaluation; and that since being sent to prison shortly after his child's birth, he had never written to him, in part because he "was hurting" most of the time.
Under OCGA § 15-11-94(a), the decision to terminate parental rights is a two-step *288 process.[1] First, the juvenile court must determine whether clear and convincing evidence exists of parental misconduct or inability as provided in OCGA § 15-11-94(b). Under OCGA § 15-11-94(b), parental misconduct or inability may be found when (1) a child is deprived; (2) the cause of the deprivation is lack of proper parental care or control; (3) such deprivation is likely to continue or not likely to be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If there is clear and convincing evidence of such parental misconduct or inability, then OCGA § 15-11-94(a) requires the court to consider whether terminating the parent's rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home.
OCGA § 15-11-94(b)(4)(B) sets forth factors to be used in determining whether lack of parental care or control is the cause of the deprivation. Among other things, the court shall consider "[e]xcessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child,"[2] as well as "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship."[3] In addition, where the child is not in the custody of the parent who is the subject of the proceedings, OCGA § 15-11-94(b)(4)(C) requires the court to consider
whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents.
"The same factors that show the existence of parental misconduct or inability may also support the juvenile court's finding that terminating the parent's rights would be in the child's best interest. [Cit.]"[4] "On appeal, we construe the evidence in the light most favorable to the findings of the juvenile court, and our standard of review is whether a rational trier of fact could have found that the parent's rights should be terminated."[5]
1. R.S.'s father contends that the evidence was insufficient to show that deprivation of his child was likely to continue or to not be remedied or that the child was likely to be seriously harmed by the deprivation.
These contentions are based on his claim that he made significant progress toward completing the goals set forth in the reunification plan. The evidence, however, construed in a light most favorable to the judgment, authorized the court to find that he had not substantially complied with the reunification plan and that the conditions of the child's deprivation were likely to continue. Although evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in his natural child,[6] the past conduct of a parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue.[7]
R.S.'s father also points out that there was no expert testimony that termination of his parental rights would be in his child's best interest. But the factors that showed the existence of parental misconduct or inability *289 supported the court's finding that termination of his father's parental rights would be in R.S.'s best interest. No expert testimony was required.
2. R.S.'s father contends that the court erred in terminating his parental rights because the reunification plan had been in effect for less than one year.[8]
As recognized in In the Interest of A.M.B.,[9] however, even if the reunification plan has been in effect for less than one year, a termination of parental rights may be warranted by other factors such as a parent's history of chronic unrehabilitated drug use (as well as felony conviction and imprisonment having a demonstrable negative effect on the quality of the parent-child relationship). The evidence here also showed that, for a period of longer than one year and without justifiable cause, R.S.'s father had failed significantly to develop and maintain a parental bond with his child in a meaningful, supportive manner. Consideration of these other factors authorized a termination of his parental rights.
Judgment affirmed.
SMITH, C.J., and JOHNSON, P.J., concur.
NOTES
[1] E.g., In the Interest of D.L., 268 Ga.App. 360, 601 S.E.2d 714 (2004).
[2] OCGA § 15-11-94(b)(4)(B)(ii).
[3] OCGA § 15-11-94(b)(4)(B)(iii).
[4] In the Interest of D.L., supra at 360-361, 601 S.E.2d 714.
[5] Id. at 360, 601 S.E.2d 714.
[6] E.g., In the Interest of R.A., 226 Ga.App. 18, 20, 486 S.E.2d 363 (1997).
[7] E.g., In the Interest of J.M.C., 201 Ga.App. 173, 174, 410 S.E.2d 368 (1991).
[8] See OCGA § 15-11-94(b)(4)(C).
[9] 219 Ga.App. 133, 464 S.E.2d 253 (1995).