A10A1336. IN THE INTEREST OF D. Q. et al., children.
(704 SE2d 444)

BARNES, Presiding Judge.

The mother of D. Q. and J. Q. appeals from the order of the juvenile court finding the children to be deprived. She challenges the sufficiency of the evidence, contending that there was no clear and convincing evidence of emotional or physical abuse and that the evidence showed that she had provided the children with the required counseling.

> On appeal from a juvenile court's order finding deprivation, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. In doing so, we neither weigh the evidence nor determine the credibility of witnesses; instead, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.

(Citations, punctuation and footnotes omitted.) *In the Interest of H. S.*, 285 Ga. App. 839 (648 SE2d 143) (2007).

So viewed, the evidence shows that in January 2009, the Douglas County Department of Family and Children Services ("DFACS") received a referral regarding 14-year-old D. Q. The mother had taken D. Q. to Douglas Wellstar Hospital and requested that he be admitted for his behavior, and when the hospital would not admit the child because he did not fit the admission criteria, the mother refused to take him home. The mother admitted to staff that she bit D. Q. during the altercation.

Upon the mother's request for assistance with D. Q., the case manager referred the family for in-home services. The mother, however, refused to sign a release for D. Q.'s medical and mental health history. She told the caseworker that she would provide DFACS with the information. The mother signed a safety plan which referenced her request for "assistance with interventions for [D. Q.] in the event that he attack[ed] her." Neither child was removed from the home.

On March 6, 2009, the mother attended a family planning meeting, and a family plan was created which required her to "provide protection and safety for [the] children with the steps focusing on [her] meeting the children's medical/mental health and educational needs." She was also required to use appropriate forms of discipline, participate in counseling with D. Q., follow the recommendations of the counselor, and maintain safe housing.

On July 21, 2009, DFACS filed a deprivation petition alleging that the mother had only minimally complied with the family plan, had failed to take the children to their psychiatrist in a timely manner, and was inconsistent with regard to the children's mental health, behavioral, and educational needs. The petition also alleged that 13-year-old J. Q. was cutting herself and was often late to school because the medications she took caused her to oversleep. It further alleged that the mother was not forthcoming with required medical and educational information about the children and was "unable to provide all of the needful and necessary parental care, guidance and supervision required to assure the health, safety, welfare, and well-being" of D. Q. and J. Q.

On September 22, 2009 nunc pro tunc to August 7, 2009, the juvenile court issued an order finding probable cause of deprivation because of the mother's failure to cooperate with the family plan, address the children's mental health issues, or fully cooperate with DFACS. Four adjudicatory hearings at which the mother was present were held on August 7, 2009, September 9, 2009, October 16, 2009, and November 18, 2009.[1]

---

[1] At the October 16, 2009 hearing, J. Q. was also arraigned on a charge of disruption of the public school system.

The DFACS caseworker testified that the mother had yet to fully comply with the family plan she signed related to the needs of D. Q. and J. Q. DFACS had not received signed medical releases it needed to substantiate the mental health treatment the mother claimed the children were receiving. Although DFACS offered the mother mental health services for the children through OASIS counseling center, the mother was not receptive to the assistance and would not schedule the appointments.

The caseworker also testified that when she visited the home in May 2009, she discovered that J. Q. was cutting herself, and although she emphasized to the mother that a family team meeting needed to be held to amend the family plan to include services for J. Q.'s mental health issues, the mother was never available to meet until after the deprivation petition was filed. The caseworker testified that the mother also called the police on D. Q. for unruly behavior, but later dismissed the complaint.

The children's primary care doctor testified that he began seeing D. Q. and J. Q. in 2004. The doctor testified that at D. Q.'s first office visit, he was informed by the mother that D. Q. had a seizure disorder and Attention Deficit Hyperactivity Disorder ("ADHD"). He testified that although he had prescribed Adderall for both children, he had not tested the children for ADHD, but that they were "already diagnosed with ADHD" before they became his patients. The doctor also testified that he prescribed Depakote for D. Q. because the child had epilepsy, based on an earlier diagnosis. The doctor admitted that he had no records from a neurologist making the diagnosis, but that the mother told him that D. Q. had epilepsy.

The primary care doctor also testified that the mother did not tell him about the children's other mental health issues, including that she had attempted to have D. Q. admitted into a hospital for emergency mental health assistance, or that J. Q. was cutting herself. The doctor testified that he had never seen any medical records from the children's other doctors, that he obtained his information about the children's medical background from the mother, and that she was a good reporter of her children's medical problems.

The children's psychiatrist testified that he had been treating the children since 2004, and that he had made a diagnosis of ADHD and bipolar disorder. However, he did not provide individual counseling for the children. The psychiatrist testified that he had originally treated D. Q. and J. Q. with Adderall, Risperdal, Depakote, and Zoloft, but at the time of the November hearing, the children were only taking Adderall because the children's "anger and mood swings" had substantially subsided. The psychiatrist was not aware that the children were also prescribed Adderall by their primary care doctor and testified that he did not know that D. Q. was taking

Depakote. The psychiatrist also testified that he was aware that D. Q. was exhibiting aggressive behavior at school and toward his mother, and also that J. Q. had bitten a teacher and stabbed another student with a pencil. He further testified that he had briefly prescribed Risperdal for J. Q.'s cutting, but that he discontinued the medication after about one month when her condition stabilized.

The mother testified at the deprivation hearing that D. Q. had been hospitalized several times starting at "about five or six years old" for his mental health issues. She also testified that J. Q. suffered a mental breakdown when she was approximately seven or eight years old and was hospitalized. The mother recalled that J. Q. had been hospitalized a second time although she could not recall the exact time. The mother testified that in addition to the other diagnoses, J. Q. had multiple personality disorder when she was younger, and had been sexually abused by a babysitter, a great uncle, and a mentally handicapped boy. The mother testified that J. Q. had counseled with a pastor about her "cutting behaviors" rather than a licensed counselor. She further testified that the children did not want to continue traditional counseling and that she was attempting "recreational therapy" for D. Q.

Under OCGA § 15-11-2 (8) (A), "deprived child" is a child "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." "That definition focuses upon the needs of the child regardless of parental fault. The deprivation petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Citation, punctuation and footnote omitted.) *In the Interest of S. J.*, 270 Ga. App. 598, 599 (607 SE2d 225) (2004).

In the deprivation order, the court found that although the children had received Social Security disability since a very young age, the mother could not provide documentation as to the basis for the disability. The court further found that the behavior issues, including J. Q. cutting herself, were cause for concern, and while the mother requested help from DFACS, she was resistant to assistance either by "lack of communication [or] lack of cooperation." The trial court found that the mother failed to attend a requested family team meeting although she had indicated she needed help with the children's behavior. The court further found that despite the children's various diagnoses, there was no coordination of treatment or medication between their physicians, or coordination of services with their schools. The juvenile court noted that despite allegations that D. Q. and J. Q. have a myriad of mental health issues, including ADHD, post-traumatic stress disorder, explosive disorder, depressive

disorder, oppositional defiant disorder, and dissociative personality disorder, "[t]here is no individual therapy and no family therapy." The trial court noted that the children's psychiatrist "indicated a need for individual therapy but stated the distance between the residence and his location in Clayton County was one of the reasons therapy was not in place."

The juvenile court also found substantiated physical abuse from the incident in which the mother had bitten D. Q. The court found that the children's behavior in school had resulted in delinquent charges, and that one of the charges was related to J. Q. biting another student at school. The court attributed the behavior to J. Q. modeling her mother's behavior. The juvenile court also found that the mother's explanation of their present living arrangements was not credible, and put the children at risk for abuse. The mother purportedly had removed the children from Douglas County and lived in Fulton County in a home with 15 other people.

OCGA § 15-11-1 (1) mandates that the juvenile court's primary responsibility is to consider and protect the welfare of children whose well-being is threatened. *In the Interest of B. H.*, 190 Ga. App. 131, 133 (1) (378 SE2d 175) (1989). As noted earlier, the primary factor in a determination of deprivation is the children's needs, not the parents' circumstances. *In the Interest of R. M.*, 276 Ga. App. 707, 715 (624 SE2d 182) (2005). The special medical needs of children and the parents' inability to provide for those needs are relevant considerations. *In the Interest of J. C. J.*, 207 Ga. App. 599, 602 (428 SE2d 643) (1993).

Under the circumstances in this case, the juvenile court correctly found that the evidence of the children's deprivation was clear and convincing in that the evidence demonstrated that D. Q. and J. Q. were not receiving adequate support for their mental health issues. Their uncontrolled behavior related to these issues was negatively affecting their academic and social well-being. There was also clear and convincing evidence that the mother was not utilizing available resources to address the children's problems, and that she had attempted to have D. Q. hospitalized because she could not control him. J. Q. also exhibited severe mental heath issues, including cutting herself and attacking other children, that were not adequately addressed. See *In the Interest of D. T.*, 284 Ga. App. 336, 338-339 (1) (643 SE2d 842) (2007) (finding of deprivation upheld where evidence showed child had severe mental health issues and mother was unable to control the child).

Thus, the juvenile court did not err in finding D. Q. and J. Q. deprived.

*Judgment affirmed. Blackwell and Dillard, JJ., concur.*

DECIDED NOVEMBER 24, 2010 —

*James K. Luttrell*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Andrea R. Moldovan, Assistant Attorneys General*, for appellee.

